# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL SECURITIES
EXCHANGE, LLC,

          Plaintiff,

     v.

CHICAGO BOARD OPTIONS EXCHANGE,
INCORPORATED,

          Defendant.

Civil Action No. 06 CIV 13445 (RMB) (THK)

---

## CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a)

**FISH & RICHARDSON P.C.**

Jonathan A. Marshall (JM 7664)
David Francescani (DF 9701)
Autumn J.S. Hwang (AH 5164)
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291
*Attorneys for Defendant*
*Chicago Board Options Exchange, Incorporated*

OF COUNSEL:

Joanne Moffic-Silver
Jordan Newmark
CHICAGO BOARD OPTIONS
EXCHANGE, INCORPORATED
400 S. LaSalle Street
Chicago, IL 60605
Telephone: (312) 786-7909

Dated: February 27, 2007

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  ISE CANNOT REBUT CBOE'S SHOWING THAT THE BALANCE OF
     CONVENIENCE AND THE INTEREST OF JUSTICE FAVOR TRANSFER ............ 4

   A.  The Balance of Convenience and Interest of Justice Require that ISE's Choice of
       Forum be Disturbed ............................................................................................ 4

   B.  Chicago is the Locus of Operative Facts ............................................................ 4

   C.  ISE Concedes that the Identified CBOE Witnesses Would Provide Relevant Trial
       Testimony ............................................................................................................ 7

   D.  CBOE's Non-Party Witnesses Cannot be Compelled to Testify at a New York Trial 7

   E.  There is No Requirement for CBOE to Establish That Its Potential Trial Witnesses
       Will be Unwilling to Testify at Trial .................................................................. 8

   F.  Other Factors ...................................................................................................... 9

III.  CONCLUSION ................................................................................................. 10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*
  860 F.Supp. 128 (S.D.N.Y. 1994) ................................................................9

*Aerotel, Ltd. v. Sprint Corp.*
  100 F.Supp.2d 189 (S.D.N.Y. 2000)..........................................................9

*American Steamship Owners Mutual Prot. and Indemnity Ass'n, Inc v. LaFarge
  North America, Inc.*
  2007 WL 2144084 (S.D.N.Y. Jan. 29, 2007) ........................................1, 8

*Atlantic Reinsurance Co. v. Continental Ins. Co.*
  2003 WL 22743829 (S.D.N.Y. November 20, 2003)...................................4

*Bristol-Myers Squibb Co., et al. v. Andrx Pharm., LLC*
  2003 WL 22888804 (S.D.N.Y. December 5, 2003) .............................1, 5, 6

*FindWhat.com v. Overture Serv., Inc.*
  2003 WL 402649 (S.D.N.Y. February 21, 2003) ........................................6

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*
  415 F.Supp.2d 370 (S.D.N.Y. 2006).......................................................4, 6

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*
  119 F.Supp.2d 433 (S.D.N.Y. 2000).........................................................5

*Master Card Int'l, Inc. v. Lexcell Solutions, Inc.*
  2004 WL 1368299 (S.D.N.Y. June 16, 2004) ............................................6

*Reliance Insurance Co. v. Six Star, Inc.*
  155 F.Supp.2d 45 (S.D.N.Y. 2001) ...........................................................1

I.    **INTRODUCTION**[1]

The allegations in the Complaint determine the locus of operative facts for the purposes of transfer.  In its Complaint, ISE specifically alleges that the "CBOE Hybrid System and Ultimate Matching Algorithm" infringe U.S. Patent No. 6,618,707 ("the '707 patent").  As shown below in section II.B., despite imprecise rhetoric in some of the S.D.N.Y. cases, the locus of operative facts in a patent infringement case is the place where the allegedly infringing device is designed, developed and used.  There can be no reasonable dispute that all of these activities occurred in Chicago.  As its name implies, CBOE's Hybrid System is a combination of an open-outcry auction and an electronic trading system.  ISE does not dispute in its opposition—and expressly admits in its recently filed Rule 26(a)(1) Initial Disclosures[2]—that the design, development, implementation and use of the allegedly infringing system took place in Chicago, Illinois.  Thus, it cannot be disputed that Chicago is the locus of operative facts in this case.

ISE can identify only two witnesses located in New York:  the inventor, Gary Katz, and the prosecuting patent attorney, Steven Lieb.  ISE represents that "it is relatively certain that in the event of trial" the two would testify regarding "CBOE's allegations that the patent is invalid, unenforceable, and not infringed" (Opp. at 8).  While it may be that the inventor could testify at trial about development of the subject matter of the '707 patent, he certainly will not be testifying as a fact witness about the invalidity, unenforceability or non-infringement of the

---

[1] Throughout its opposition, ISE asserts that the burden of proof in a transfer motion is "clear and convincing evidence."  (Opp. 5, 6, 11).  This is incorrect.  The grant or denial of a transfer motion is within the discretion of the court.  *Bristol-Meyers Squibb Co. v. Andrx Pharm., LLC*, 2003 WL 22888804, *1 (S.D.N.Y. Dec. 5, 2003).  Despite the "clear and convincing evidence" language in *American Steamship Owners Mutual Prot. and Indemnity Ass'n, Inc v. LaFarge North America, Inc.*, 2007 WL 214408, *4 (S.D.N.Y. Jan. 29, 2007), cited by ISE, the Court in *Reliance Ins. Co. v. Six Star, Inc.* 155 F. Supp. 2d 45, 56 (S.D.N.Y. 2001), cited by *American Steamship*, stated that whether transfer is warranted is within the discretion of the court in consideration of factors of convenience and fairness.
[2] Annexed as Exhibit E to the Supplemental Francescani Declaration ("Supp. Francescani Dec.").

patent.  These topics are the subjects of *expert* testimony—and the location of expert witnesses is

not a factor to be considered in deciding change of venue under § 1404(a).  As for Mr. Lieb,

there are no facts or non-privileged communications about which the prosecuting patent attorney

could testify other than those germane to the defense of inequitable conduct which has not been

raised in this case.  ISE is silent on this subject as it must be.

ISE also refers obliquely to its "employees located in Manhattan" but must be silent as to

just what knowledge any of them has that bears on this case.  It is particularly telling that

according to ISE's Initial Disclosures, none of these ISE employees are likely to have

discoverable information—but five named CBOE employees, four unnamed "Chairs or Vice

Chairs" of CBOE committees, and *everyone* identified in CBOE's Memorandum in Support of

this motion are identified as having information relevant to the alleged infringement of the '707

patent.  All of the CBOE party and non-party witnesses identified in ISE's initial disclosures live

and work in and around Chicago; not one is in New York.

ISE attempts to brush aside CBOE's showing that a large number of non-party fact

witnesses are beyond the subpoena power of this district, suggesting that CBOE use their

deposition testimony at trial.  (Opp. at 11).  Were CBOE compelled to do that, it would work a

substantial prejudice and would not be in the interest of justice.  There is no substitute for live

testimony to give the trier of fact the opportunity to judge the credibility of a witness.  *See*

section II.E.

As exemplified in CBOE's patent application published in 2004, its Hybrid System is a

vast, complex options trading system having many disparate parts and sub-parts.  The individuals

identified by CBOE to testify on the issues of design, development and implementation of the

Hybrid System are necessary because no one person has the requisite knowledge.  Further

compounding CBOE's need for numerous witnesses is the complexity of the '707 patent which includes 23 sheets of drawings, a 29-column specification, and 75 claims—all of which have been asserted against CBOE's Hybrid System.

As noted earlier, the Hybrid System combines features of the traditional, people-intensive "open outcry" exchange with features of the electronic exchanges which began to be developed over two decades ago. Because the Hybrid System is people-intensive, it requires the personal attention and participation of CBOE employee witnesses as well as non-party witnesses who are engaged daily with the exchange. That is why it is a particular hardship for them to travel away from Chicago to testify at trial.

On the other hand, ISE does not even suggest any possible hardship to Mr. Katz if he were required to testify in Chicago. That is likely because given the completely electronic nature of the exchange operated by ISE, Mr. Katz would be comfortable anywhere he could power-up his laptop.

ISE disparages CBOE's point that the only place the accused system can be observed is at CBOE in Chicago, noting that "[i]t is irrelevant whether ISE may want to observe trading activities at CBOE...." (Opp. at 13). ISE misses the point. It is routine in patent cases for the alleged infringer to demonstrate its accused product in court so the non-infringing features may be best explained and demonstrated to the trier of fact. This is vitally important to CBOE's non-infringement defense. But the accused Hybrid System exists only in Chicago, where the trier of fact can travel a short distance from the courthouse to view it in operation. Videotapes and transcripts are no substitute for a live demonstration. If not afforded the opportunity in its defense to demonstrate the accused system to the trier of fact, CBOE would be substantially prejudiced.

3

## II.    ISE CANNOT REBUT CBOE'S SHOWING THAT THE BALANCE OF CONVENIENCE AND THE INTEREST OF JUSTICE FAVOR TRANSFER

### A.    The Balance of Convenience and Interest of Justice Require that ISE's Choice of Forum be Disturbed

A plaintiff's choice of forum is given *less* weight where, as here, the operative facts have little connection with the chosen forum. *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F.Supp. 2d 370, 376 (S.D.N.Y. 2006). The issue of the locus of operative facts is discussed below in section II.B.

ISE can identify only two New York witnesses: the inventor and the prosecuting patent attorney. However, neither the unspecified, expected testimony of these individuals nor ISE's location in New York has any bearing on the primary issue raised by the Complaint—the alleged infringement by CBOE's Hybrid System which occurred in Chicago.[3]

### B.    Chicago is the Locus of Operative Facts

The locus of operative facts is one of the most critical factors in determining a transfer motion. Unfortunately, in a number of the recent cases in this district, the rhetoric associated with the analysis of this factor has been clouded by the fact that two different types of patent cases can be brought: a patent infringement action in which the patentee initiates the action, and a declaratory judgment action in which an alleged infringer initiates an action for a declaration of invalidity and/or non-infringement of the patent. In both situations, "[i]n determining the locus of operative facts, a court must look to the site of events from which the claim arises." *Trans-Atlantic Reinsurance Co. v. Continental Ins. Co.*, 2003 WL 22743829 at *5 (November 20, 2003). In this patent infringement case, ISE, the patentee, has asserted in its Complaint that

---

[3] The fact that CBOE has a three-person office in New York for the purpose of promoting client relationships is irrelevant to the design, development and utilization of CBOE's Hybrid System.

4

CBOE's Hybrid System infringes its patent. Thus, the locus of operative facts is determined by the locus of the design, development and use of the accused system.

Apposite is *Bionx Implants, Inc., et al., v. Biomet, Inc., et al.*, 1999 WL 342306 (S.D.N.Y. May 27, 1999), a patent infringement action, in which the Court noted in considering transfer, that the plaintiff's choice of forum is given reduced emphasis where the operative facts upon which the litigation is brought bear little material connection to the chosen forum. Recognizing that the infringement issues involved the design, development and production of the accused devices, and determining that the events which gave rise to plaintiff's claims had occurred in Indiana, the Court ordered transfer to that venue. *Id.* at *3-*4

The confusion in the rhetoric in the cases in this district appears to have originated in *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp. 2d 433 (S.D.N.Y. 2000). There, in granting a motion to transfer, the Court relied on *Bionx Implants*, stating "operative facts in a patent infringement action include facts relating to the design, development and production of a *patented* product" (emphasis supplied). *Id.* at 439. This statement has introduced some confusion into the law in this District. Although a reading of the decision confirms that the *Invivo* Court was actually referring to the design, development and production of the *accused* product, the Court used the expression "patented product" which is not the accused product but the product that is the basis for the patent. *See id.*

Unfortunately, the confusion continued in *Bristol-Myers Squibb Co., et al. v. Andrx Pharm., LLC*, 2003 WL 22888804 (S.D.N.Y. December 5, 2003). There, the Court ordered transfer, but stated that in a patent infringement action, "the locus of operative facts is the jurisdiction where the design and the development of the infringing *patent* occurred." *Id.* at *3. The Court further stated that it was also relevant that the designers, developers and marketers of

5

the allegedly infringing *patent* are employed in the transferee forum. *Id*. at \*4. The Court

obviously meant to refer to the allegedly infringing *product* because there is no such thing as an

infringing *patent*. The Court in *Bristol-Myers* correctly noted, however, that it made "little

difference that the development of the underlying Bristol *patent* took place in New Jersey, where

the Bristol research facilities are located." *Id*. at \*4 (emphasis added).

Likewise, *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375

(S.D.N.Y. 2006), cited the "patented product" quote from *Invivo*. Despite use of this expression,

the *Fuji* Court, granting transfer, correctly focused on the fact that the accused products had been

designed, developed and produced by defendants in California. *Id*.

Thus, despite the rhetoric in the foregoing 1404(a) transfer motion cases, it remains clear

that in this District, the locus of operative facts in a patent infringement action is where the

allegedly infringing device is designed, developed and used. Here, those events occurred in

Chicago.[4]

ISE argues that evidence concerning the conception, development and prosecution of the

patent is necessary to the case. (Opp. at 8.) As in all patent cases, however, it is of marginal

relevance compared to the patent itself. Here, the locus of operative facts remains Chicago, the

site of the events from which ISE's claim arises.

---

[4] In declaratory judgment actions involving patents, the basic law is the same: the allegations in
the Complaint control the determination as to the locus of operative facts. Thus, in *MasterCard
Int'l, Inc. v. Lexcell Solutions, Inc.*, 2004 WL 1368299 (S.D.N.Y. June 16, 2004), a declaratory
judgment action of non-infringement and invalidity of certain patents, defendant patentee moved
to transfer to Arizona. *Id*. at \*1. The court stated that the allegations in the Complaint largely
focused on the contention that the patentee failed to disclose prior art to the Patent and
Trademark Office during the prosecution of the patents-in-suit. *Id*. at \*6. In granting transfer,
the Court stated that the locus of operative facts support the ruling because the patented systems
were developed there, and prosecution of the patent took place in Arizona. *Id*.

Likewise, *FindWhat.com v. Overture Serv., Inc.*, 2003 WL 402649 (S.D.N.Y. February 21,
2003) is another declaratory judgment action where the defendant-patentee sought transfer. *Id*.
at \*1. In granting the transfer motion, the Court noted that the development of the invention took
place in California and the locus of operative facts suggested that California would be the more
appropriate forum. *Id*. at \*6.

**C.    ISE Concedes that the Identified CBOE Witnesses Would Provide Relevant Trial Testimony**

Both ISE and CBOE filed Rule 26(a)(1) Initial Disclosures on February 14, 2006. Despite questioning in its Opposition the "materiality, nature, quality and uniqueness" of the potential trial witnesses CBOE identified in its transfer motion, ISE identified in its Initial Disclosures the very same CBOE witnesses—all located in Chicago—as individuals having information that may support *ISE's claims*.[5] ISE specifically characterized all of these witnesses as having relevant knowledge regarding the design, manufacture, construction, programming, testing, operation and/or use of CBOE's allegedly infringing systems. The only New York individuals ISE could identify are the inventor and the prosecuting patent attorney.

ISE's initial disclosures are a flat-out concession that the locus of operative facts and witnesses relating to its claim—the design, development and use of the allegedly infringing system—is Chicago.[6]

**D.    CBOE's Non-Party Witnesses Cannot be Compelled to Testify at a New York Trial**

ISE argues that because CBOE's non-party witnesses are subject to discovery subpoenas, this factor favors ISE (Opp. at 11). Again, ISE misses the point. 28 U.S.C. § 1404(a) contemplates transfer to the location where the cases should be tried. The emphasis is not on obtaining discovery but on transferring a case to the proper venue for purposes of trial. That discovery can be obtained from CBOE's identified non-party witnesses is immaterial; what matters is the extent those witnesses can provide unique testimony at trial on the design, development and use of the accused CBOE Hybrid System. At least two of the inventors named

---

[5] *See* Supplemental Francescani Dec., Exhibit E.
[6] CBOE's Rule 26(a)(1) initial disclosures identify with particularity and names all of the individuals originally set forth in its memorandum, and identify with particularity the nature of their knowledge with respect to the design, development and use of the allegedly infringing CBOE Hybrid System. CBOE's initial disclosures are annexed as Exhibit F to Supp. Francescani Dec.

on CBOE's pending patent application—Mark Esposito and Anthony Carone—are non-parties who were intimately involved in various aspects of the design, development and use of CBOE's Hybrid System. Both have declared it would be a business hardship for them to be in New York for a prolonged period of time because of the nature of their job responsibilities in Chicago.

### E.    There is No Requirement for CBOE to Establish That Its Potential Trial Witnesses Will be Unwilling to Testify at Trial

ISE cites *American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc.*, 2007 WL 214408 (S.D.N.Y. January 29, 2007) at *4 for the proposition that "[c]onsideration of the availability of process to compel the testimony of witnesses is only necessary if the non-party witnesses are unwilling to testify." (Opp. at 12). ISE's paraphrase is misleading to the extent it implies that a witness' unwillingness to testify must be established in connection with a transfer motion. In fact, the Court in *American Steamship* merely stated that one of the factors to be considered in a transfer motion is "the availability of process to compel attendance of unwilling witnesses." *American Steamship* at *4.

In any event, at this early stage, it is impossible to determine which witnesses will or will not voluntarily testify at trial. However, experience dictates that as the trial date approaches, witnesses who have business and personal plans often decide that the prospect of providing testimony at a trial is not high on their list of preferred activities. For such witnesses, it is imperative that CBOE have the capability to compel their attendance.[7] As the court in *American Steamship* observed, deposition testimony of non-party witnesses "would clearly be second-best to their trial testimony." *Id.* at *9.

---

[7] Given that proof of ISE's claim of infringement directly involves these witnesses as well, it should be in ISE's interest to be able to compel their attendance at trial.

8

F.      **Other Factors**

This case involves much more than a shift of the burden from one party to another.  In its

moving papers, CBOE identified as located in Chicago all of the witnesses (party and non-party),

documents and systems involved in the design, development and use of the accused system, as

well as the witnesses, documents and systems relating to prior art systems.  ISE identified as

located in New York two witnesses and the documents relating to the alleged invention.

Consequently, a substantial part of this case will require the parties to be in Chicago for extended

periods to investigate and obtain evidence regarding the accused system and the prior art

systems.  It would be more convenient for the case to be located in Chicago where parties and

non-parties alike can apply to the local court for the resolution of disputes.

CBOE filed a declaratory judgment action in the U.S. District Court for the  Northern

District of Illinois on January 31, 2007.  That action involves the '707 patent and two other ISE

patents which ISE offered to license to CBOE.[8]  ISE now makes a half-hearted claim that the

Chicago court may not have jurisdiction over it.[9]  (Opp. at 15).  This position is curious in light

of the facts that:  (i)  ISE is currently engaged in an unrelated state court action in Chicago with

CBOE, Dow Jones and McGraw-Hill regarding trading options on stock indices.  Even after

substantial motion practice, ISE has never raised the issue of lack of personal jurisdiction;[10]  (ii)

ISE is a part owner of the Options Clearing Corporation ("OCC") located in Chicago which is

the sole issuer of all standardized options contracts traded by U.S. options exchanges including

---

[8] The First Filed Rule is not applicable here because the issues in the two cases are different.
The Chicago case involves two ISE patents not involved in this action.  *800-Flowers, Inc. v.
Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994).
[9] ISE's reliance *on Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d. 189 (S.D.N.Y. 2000) is totally
misplaced because (i) that case involved identity of issues not present here and (ii) the quoted
statement (Opp. at 15) that a forum hearing a declaratory judgment action "cannot award
damages to the infringing party" is simply wrong.  First, an award would be to the patentee and
second, a patentee in a declaratory judgment action typically counterclaims for a patent
infringement entitling the patentee to damages.
[10] Supp. Francescani Dec., ¶ 6.

9

CBOE and ISE;[11] (iii)  ISE interacts with its members and customers in Chicago for thousands of trades every day on its International Securities Exchange;[12]  and (iv)  ISE reports all of its trades to the Options Price Reporting Authority ("OPRA") located in Chicago.[13]

ISE argues that transfer should be denied because discovery has already started in this case.  (Opp. at 15).  On the contrary, the fact that document discovery has begun should have no effect on transfer.  Once ISE was made aware that CBOE intended to file this transfer motion, it immediately served CBOE with discovery requests as a make-weight.  CBOE is preparing its responses which will become a part of this case, whether it is tried in New York or Chicago.

ISE further argues that since discovery in this case is scheduled to close in July, it will be far ahead of the Chicago action because ISE does not plan to file its motions to dismiss, transfer or stay in Chicago until April 2007.  (Opp. at 15).  Not only is this another bootstrap argument (ISE requested a stipulated 40-day stay to respond to the Complaint in the Chicago action), but ISE is attempting to "game" the system by using its own requested extension of time in Chicago to claim that the New York action will be far ahead of the Chicago action because of ISE's own strategies and to argue that transfer should be denied for this reason.  This Court should not permit such tactics to influence the determination of the present motion.

## III.   CONCLUSION

For the reasons set forth above and in CBOE's opening brief, CBOE respectfully requests that its transfer motion be granted.

Jonathan A. Marshall (JM 7664)
David Francescani (DF 9701)

---

[11] *See* ISE's Corporate Overview, annexed as Exhibit G to Supp. Francescani Dec. Mr. Katz is also a board member of the OCC and the OCC bills and collects transaction fees on behalf of ISE. *See* The Options Clearing Corporation 2006 Annual Report, at p. 19, 31, annexed as Exhibit H to Supp. Francescani Dec.
[12] Supp. Francescani Dec., ¶ 7.
[13] Supp. Francescani Dec., ¶ 8.

## CERTIFICATE OF SERVICE

I am employed in the County of New York.  My business address is Fish & Richardson P.C., 153 East 53rd Street, 52nd Floor, New York, New York 10022.  I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On February 27, 2007 I caused a copy of:

**CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED'S
REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a)**

**and**

**SUPPLEMENTAL DECLARATION OF DAVID FRANCESCANI
IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER**

to be served on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

Parker H. Bagley                                    Attorneys for Plaintiff
Michael M. Murray                                International Securities Exchange, LLC
James R. Klaiber
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY  10005-1413
Facsimile: (212) 530-5219

11

| | MAIL: | Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business. |
|---|---|---|
| | PERSONAL: | Such envelope was delivered by hand to the offices of the addressee. |
| | FACSIMILE: | Such document was faxed to the facsimile transmission machine with the facsimile machine number stated above. Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error. |
| | FEDERAL EXPRESS: | Such correspondence was deposited on the same day in the ordinary course of business with a representative of Federal Express. |
| | EXPRESS MAIL: | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by the United States Postal Service. |
| | OVERNIGHT DELIVERY: | Such correspondence was given on the same day in the ordinary course of business to an authorized courier or a driver authorized by that courier to receive documents. |

I declare that I am employed in the office of Fish & Richardson P.C. at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct. Executed on February 27, 2007 at New York, New York.

Loreylys M. Perez

30328353.doc

12